**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.**

BERNARD COHEN, individually
and on behalf of all others similarly situated,   **CLASS ACTION**

    *Plaintiff*,

vs.

NEWSMAX MEDIA, INC.,   **JURY TRIAL DEMANDED**
a Delaware Corporation,

    *Defendant*.
_____/

**CLASS ACTION COMPLAINT**

    Plaintiff, Bernard Cohen (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against Newsmax Media, Inc. ("Newsmax" or "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA").  Specifically, Defendant negligently or willfully violated the TCPA and invaded Plaintiff's privacy by repeatedly contacting Plaintiff on Plaintiff's residential telephone line despite Plaintiff having registered his number on the National Do-Not-Call Registry.

    2.    Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

1

3. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] The TCPA is designed to protect consumer privacy by, among other things, creating a private right of action against companies that engage in telemarketing without instituting appropriate do-not-call procedures. 47 C.F.R. 64.1200(d).

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

5. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted calls to Plaintiff.

6. The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of the State of Florida by placing calls to Plaintiff and Class Members in and from this state.

## PARTIES

7. Plaintiff is more than ninety years old and domiciled in Palm Beach County, Florida.

8. Defendant, Newsmax Media, Inc., a Delaware Corporation, is a citizen of the state of Florida and registered in the state of Florida, listing its principal address at 750 Park of Commerce Dr., Suite 100, Boca Raton, Florida 33487.

---

[1] *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

9. Defendant holds itself out as "the one source that brings you in-depth cover stories and hard hitting investigative reports that you can't find in mainstream media outlets." [2]

10. Defendant promotes and markets its various media products and magazine subscription sales by calling wireless phone users in violation of the TPCA.

11. Defendant, directly or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39). Defendant is a citizen of the State of Florida, and at all times mentioned herein was, a corporation and "persons," as defined by 47 U.S.C. § 153 (39).

13. At all times relevant Defendant conducted business in the State of Florida and in Palm Beach County, within this judicial district.

14. Upon information and belief, Plaintiff alleges that Defendant Newsmax targets senior citizens, like Plaintiff, in its telemarketing campaigns and places repeated calls to them.

15. In a twelve-month period, Defendant has placed two or more telephone calls to Plaintiff's DNC-registered telephone number.

16. Plaintiff only has a cellular telephone line which he uses for residential purposes; he cancelled his landline telephone prior to 2018. Plaintiff registered his cellular phone number with the Do Not Call registry on July 30, 2009.

---

[2] https://www.newsmax.com/t/newsmax/article/664637/168#:~:text=Newsmax%20Magazine%20is%20the%20one,MSNBC%20and%20many%20other%20outlets [as of May 3, 2021].

**Defendant Engaged in a Pattern and Practice of Prohibited Behavior**

17.     Beginning on or about November 6, 2019, the Defendant – whether a direct employee, agent, or someone acting on behalf of Newsmax– called Mr. Cohen approximately twelve times to sell him magazine subscriptions.

18.     On November 6, 2019, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. That same day, Newsmax charged Mr. Cohen's Discover credit card $89.85 for three different magazine subscriptions. The call was placed from the number (561) 231-6995.

19.     Upon information and belief, Plaintiff alleges that the telephone number (561) 231-6995 is owned and operated by Defendant and purports to use this number for customer service and fulfillment purposes.

20.     On November 12, 2019, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. That same day, Newsmax charged Mr. Cohen's Discover credit card another $188.90 for three more subscriptions.

21.     On November 20, 2019, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. The next day, Newsmax charged Mr. Cohen's Discover credit card $126.85 for three more subscriptions. The call was placed from the number (561) 231-6995.

22.     On November 27, 2019, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. That same day, Newsmax charged Mr. Cohen's Discover credit card $699.85 for seven subscriptions. The call was placed from the number (561) 231-6995.

23. On November 27, 2019, there were two identical charges of $69 on Mr. Cohen's Discover card for subscriptions to "NMX Dividend Machine." Newsmax had charged Mr. Cohen $109 for the same publication just six days earlier.

24. On December 2, 2019, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. That same day, Newsmax charged Mr. Cohen's Discover card $172.90. The call was placed from the number (561) 231-6995.

25. In 2019, the Defendant called Mr. Cohen to sell him magazine subscriptions no fewer than twelve times. The Defendant charged his credit card $1,518.85. Many of these subscriptions were for publications that Mr. Cohen never authorized, did not want, or already had subscriptions to.

**Defendant's Prohibited, Fraudulent Behavior Continued into 2020**

26. On January 4, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. That same day, Newsmax charged Mr. Cohen's Discover card $71.90 for two subscriptions. The call was placed from the number (561) 231-6995.

27. On January 16, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. The next day, Newsmax charged Mr. Cohen's Discover card $150.85. The call was placed from the number (561) 231-6995.

28. On January 30, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. The next day, Newsmax charged Mr. Cohen's Discover card $304.80 for two more subscriptions. The call was placed from the number (561) 231-6995.

29. One of the subscriptions sold to Mr. Cohen that day was for Newsmax Magazine, and Mr. Cohen was charged $111.85. Just two months earlier he had been sold a subscription to

Newsmax Magazine for $39.95; and one month before that he had been sold a subscription to Newsmax Magazine for $29.95.

30. On February 1, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. The next day, Newsmax charged Mr. Cohen's Discover card $124.85 for the "Dr. Crandall Report." The call was placed from the number (561) 231-6995.

31. Newsmax advertises that the annual subscription price of the Dr. Crandall Report is $54.95. Newsmax previously charged Mr. Cohen $54.95 on August 5, 2019 – less than six months earlier – for a subscription to the Dr. Crandall Report.

32. On March 3, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. The next day, Newsmax charged Mr. Cohen's Discover card $194. The call was placed from the number (561) 231-6995.

33. On July 2, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. Five days later, Mr. Cohen's Citibank debit card was charged $71.90 for "The Mind Health report." The call was placed from the number (561) 231-6995.

34. Newsmax's advertised price for a subscription to The Mind Health Report is $39.95 for one year, $69.95 for a two-year subscription, and $89.85 for a three-year subscription. In addition to the to the July 7th charge, Newsmax previously charged Mr. Cohen $39.95 for the Mind Health report on November 12, 2019; charged him $35.95 again on November 21, 2019; charged him $35.95 yet again on January 4, 2020; and $71.90 on July 7, 2020.

35. On July 8, 2020, Newsmax or someone acting on its behalf called Plaintiff twice for the purpose of selling magazine subscriptions. Five days later, Newsmax charged Mr. Cohen's Citibank debit card $235. The call was placed from the number (561) 231-6995.

36. One of the charges on January 13th was for the NMX "High Income Factor" in the amount of $166. Newsmax subsequently charged Mr. Cohen $194 on March 4, 2020 for the same publication. Newsmax advertises the annual subscription price for the print edition of The High Income Factor is $109.95.

37. On July 17, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. Four days later, Newsmax charged Mr. Cohen's Citibank debit card $140.85 for a subscription to Newsmax Magazine. The call was placed from the number (561) 231-6995.

38. Newsmax advertises the one-year subscription price of Newsmax Magazine is $39.95, with automatic renewal at "the lowest renewal rates then in effect." Newsmax charged Mr. Cohen's credit card for subscriptions to Newsmax Magazine on November 6, 2019 ($29.95); on December 2, 2019 ($39.95); on January 31, 2020 ($11.85); on July 24, 2020 ($140.85); and on December 10, 2020 ($89.95).

39. On July 22, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. Two days later, Newsmax charged Mr. Cohen's Citibank debit card $54.95. The call was placed from the number (561) 231-6995.

40. On August 3, 2020, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling magazine subscriptions. Three days later, Newsmax charged Mr. Cohen's Citibank debit card $69. The call was placed from the number (561) 231-6995.

41.     In 2020, the Defendant called Mr. Cohen at least ten times. Newsmax charged Mr. Cohen's Discover credit card or his Citibank debit card $1,563.00.

**Defendant's Prohibited, Fraudulent Behavior Continued into 2021**

42.     In 2021, the Defendant contacted Mr. Cohen by telephone numerous times. These improper telephone calls resulted in Newsmax charging Mr. Cohen $995.95.

43.     Not only did Defendant make unsolicited calls to Plaintiff, it engaged in numerous deceptive acts.

44.     On February 24, 2021, Elizabeth Casper, who works as one of Mr. Cohen's care managers, called Newsmax Magazine's customer service at 1-800-485-4350.  She spoke with a representative named Abdoolah to cancel the subscriptions. While speaking with Abdoolah, the representative told Ms. Casper that Mr. Cohen had called the company on February 15, 16, and 20 of 2021. That was patently false, as the attached telephone bills (Exhibit XXX) make clear. Mr. Cohen's Verizon phone records show that he made no outgoing calls on those days.

45.     While Ms. Casper was on the phone with the Newsmax representative, Mr. Cohen's cell phone rang and he answered it. Mr. Cohen was sitting at the dining room table with Ms. Casper, and she could hear not just Mr. Cohen's side of the conversation, but heard the caller identify himself as calling from NMX. (All bills from Newsmax contain the designation "NMX" plus the individual magazine name.) Ms. Casper placed Abdoolah on hold, and took Mr. Cohen's phone.

46.     The person who had called Mr. Cohen identified himself as Justin Miller, a representative of NMX, and gave this address: 760 Park of Commerce Drive, Boca Raton, FL 33487. (That is the corporate address of Newsmax Media, Inc.)  He gave this phone number: 561-

375-5597. Mr. Miller told Ms. Casper that he had called Mr. Cohen on February 15, 16, and 20, 2021. There are no inbound phone calls to Mr. Cohen's phone from that number.

47. Abdoolah's statement to Ms. Casper that Mr. Cohen called Newsmax on February 15, 16, and 20, 2021 was not only false, but contradicted by Mr. Miller.

48. On March 4, 2021, Ms. Casper again called Newsmax Customer Service. She was told that Newsmax does not call individuals to offer subscriptions. The Newsmax representative then told Ms. Casper that representatives sometimes do call customers with "promotions".

49. On that same March 4th call with Newsmax, the customer service representative told Ms. Casper that Mr. Cohen had placed several orders for magazines via the internet. That is patently impossible: Mr. Cohen does not own a computer, does not have internet service in his home, or have an internet-enabled phone. Mr. Cohen does not know how to text or use voicemail on his phone.

50. In a period of less than two years – from May 2019 through February 2021 – Newsmax telephoned Mr. Cohen dozens of times, and charged his credit card or debit card 49 times totaling $4,595.70.

51. Many of the calls made to the Plaintiff were made from telephone number (561) 231-6995 which several websites, including RoboKiller.com, has identified as a phone number belonging to or being used by Newsmax to solicit magazine subscriptions.

52. The telemarketing calls were made to Plaintiff's 2164 Number, and within the time period that is relevant to this action.

53. At no time did Plaintiff provide Plaintiff's cellular number to Defendant through any medium, nor did Plaintiff consent to receive such unsolicited calls.

54. Plaintiff has never signed-up for, and has never used, Defendant's services, and has never had any form of business relationship with Defendant.

55. Plaintiff is the subscriber and sole user of the 2164 Number and is financially responsible for phone service to the 2164 Number, including the cellular costs and data usage incurred as a result of the unlawful calls made to Plaintiff by Defendant.

56. Additionally, Plaintiff's 2164 Number has been registered on the National Do Not Call Registry since July 30, 2009.

57. The content of the calls made to Plaintiff and the Class Members show that they were for the purpose of marketing, advertising, and promoting Defendant's business and products to Plaintiff as part of an overall telemarketing strategy.

58. These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

59. Plaintiff did not provide Defendant or its agents prior express consent to receive calls, including unsolicited calls, to Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227(b)(1).

60. The unsolicited calls by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

61. Defendant is and was aware that it is placing unsolicited calls to Plaintiff and other consumers without their prior express consent.

62. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted calls, forcing Plaintiff to divert attention away from Plaintiff's personal activities. Not only did the receipt of the calls distract Plaintiff away from Plaintiff's personal activities, Plaintiff was forced

to spend time investigating the source of the calls and who placed them to him. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".… "[A] small injury… is enough for standing purposes").

63. Defendant fraudulently charged Mr. Cohen multiple times for the same magazines and newsletters, costing him thousands of dollars.

64. Plaintiff spent more than 12 minutes on the November 6, 2019 call, 2 minutes on the November 12, 2019 call, 8 minutes on the November 20, 2019 call, 10 minutes on the November 27, 2019 call, and 9 minutes on the December 2, 2019 call. Plaintiff spent more than 4 minutes on the January 24, 2020 call, 10 minutes on the January 16, 2020 call, and 14 minutes on the January 31, 2020 call. He spent more than 9 minutes on the February 1, 2020 call, and 6 minutes on the March 3, 2020 call. Likewise, Plaintiff spent 11 minutes on the July 2, 2020 call, a total of 13 minutes on the two July 8, 2020 calls, 16 minutes on the July 17, 2020 call, and 6 minutes on the July 22, 2020 call. Plaintiff spent 11 minutes on the August 3, 2020 call [and additional time on multiple calls during the rest of 2020 and early 2021.]  Thus, Plaintiff has spent over two hours on the phone with Defendant on their multiple calls over a period of multiple years.

65. Although Mr. Cohen is unable to investigate the source of these calls, his care manager Ms. Casper has spent considerable time on the phone with Newsmax and many hours investigating the improper charges made by the Defendant on Mr. Cohen's credit card and debit card.

66. These predatory sales calls further damaged Plaintiff because they resulted in Defendant charging Plaintiff's credit card and debit card more than $4,595 for unwanted magazine subscriptions.

11

## **CLASS ACTION ALLEGATIONS**

67.     Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and/or services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

68.     Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

69.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

70.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized SPAM campaign calls placed to residential telephone numbers, Plaintiff believes, at a minimum, there are significantly greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is

impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

71. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and marketing records.

72. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

73. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. How Defendant obtained the numbers of Plaintiff and Class members;
   b. Whether Defendant engaged in telemarketing when it placed the calls which are the subject of this lawsuit;
   c. Whether Defendant removed DNC-registered numbers from its call lists;
   d. Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;
   e. Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

    f.    Whether the calls made to Plaintiff and Class Members violate the Do Not Class Registry rules and regulations;

    g.    Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

    h.    Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

    i.    Whether Plaintiff and the Class are entitled to any other relief.

74. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

75. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

76. Defendant placed or caused to be placed at least two telephone calls during a twelve-month period to Plaintiff and members of the Class, promoting the sales of magazine subscriptions.

77. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

78. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

79. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

**COUNT I**
**VIOLATION OF THE TCPA**
**47 U.S.C. § 227**
**On Behalf of Plaintiff and the Do Not Call Registry Class**

80. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 49 as though fully stated herein.

81. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

82. This prohibition applies to telephone solicitations directed to both residential landlines and to consumers' wireless numbers. See, 47 C.F.R. § 64.1200(e).

83. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

84. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

85. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

86. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

87. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, individually and jointly, as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

a. WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and in favor of the class, against Defendant for:

b. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

c. Statutory damages of $500 per call in violation of the Do Not Call Registry;

d. Willful damages of $1,500 per call in violation of the Do Not Call Registry;

e. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5);

f. An injunction prohibiting Defendant's from calling DNC-registered numbers without the prior express written consent of the called party;

    g. Reasonable attorney's fees and costs; and

    h. Such further and other relief as this Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated: May 18, 2021

Respectfully submitted,

*/s/ Seth M. Lehrman*
Seth M. Lehrman (FBN 132896)
E-mail: seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Steve Cohen *(Pro Hac Vice to be sought)*
E-mail: Scohen@PollockCohen.com
POLLOCK COHEN LLP
60 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212-337-5361

Daniel Schlanger *(Pro Hac Vice to be sought)*
E-mail: dschlanger@consumerprotection.net
SCHLANGER LAW GROUP, LLP
80 Broad St., Suite 1301
New York, NY 10004
Telephone: 212-500-6114