UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 21-80894-CIV-DIMITROULEAS

BERNARD COHEN, individually and on
behalf of all others similarly situated,

    Plaintiff,

-vs-

NEWSMAX MEDIA, INC.,

    Defendant.

_____/

**<u>DEFENDANT'S PARTIAL MOTION TO DISMISS</u>**

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1(a), Defendant Newsmax Media, Inc. ("Newsmax") respectfully submits this Partial Motion to Dismiss and incorporated memorandum of law in support of its request that the Court dismiss the two Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, claims (Counts I and II) asserted in Plaintiff's First Amended Complaint ("FAC") (ECF No. 6).

## I.   <u>INTRODUCTION</u>

This simple TCPA case masquerades as one about fictitious widespread abusive sales practices targeting senior citizens.  Yet, the FAC does not allege any violations other than TCPA "do not call" claims, the subject of this Motion, and an individual claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.  Specifically, Plaintiff, a self-described "nonagenarian suffering from dementia" being represented by his nephew, FAC ¶ 4, alleges on behalf of two classes that Newsmax violated the TCPA by placing unsolicited telemarketing calls to him even though his telephone number has been registered on the National Do Not Call Registry ("NDNC") since July 2009, and continuing to call him after one of his "care managers," Elizabeth Casper, requested that he no longer receive such calls.

Although the TCPA was enacted to be a shield for consumers, it has now become a sword for litigants and their counsel seeking to leverage its draconian statutory damages into settlements of baseless and meritless claims.  Indeed, courts have noted that the TCPA "has strayed far from its original purpose" and become the poster child for lawsuit abuse.  *Fontes v. Time Warner Cable Inc.*, 2015 WL 9272790, at *3 (C.D. Cal. Dec. 17, 2015) (citation omitted); *see also Morris v. UnitedHealthcare Ins. Co.*, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016) ("TCPA suits have, in many instances, been abused . . .").  This TCPA case fits that mold because the complained-of calls Plaintiff received are not actionable under the statute's do not call provisions.

Relevant to this Motion, Plaintiff's FAC alleges two TCPA claims.  Count I asserts that Newsmax violated the TCPA's NDNC provision, 47 U.S.C. § 227(c), and its implementing regulation, 47 C.F.R. § 64.1200(c), by placing more than one purportedly unsolicited telemarketing call to Plaintiff within a twelve-month period.  Count II alleges violations of the TCPA's technical and procedural internal do not call list regulations set forth in 47 C.F.R. § 64.1200(d).  Specifically, Plaintiff claims that Newsmax continued to call him despite Ms. Casper's requests that Newsmax stop doing so.  Although both TCPA claims are without merit on the facts, the Court need not wait until the summary judgment stage to dispose of them given that Plaintiff's claims cannot survive under Rule 12(b)(6).

This Motion should be granted for several reasons.  First, both claims fail because the TCPA's do not call provisions apply only to communications to "residential" telephone numbers, not cell phones.  A cellular telephone number is not a "residential" telephone number.  Different sections of the TCPA treat communications to cellular and residential telephones differently.  The number of decisions that have concluded that the TCPA's do not call rules apply only to communications to residential lines is legion.  Here, because Plaintiff has alleged that he received the complained-of calls on his cell phone, he cannot, as a matter of law, allege violations of the TCPA's do not call rules.  And, even if a cell phone could simultaneously be a residential landline (it cannot), Plaintiff's allegation is purely conclusory—he pleads no facts regarding how he uses his cell phone or why it, in fact, is "residential."

Second, the TCPA's NDNC provisions apply only to "telephone solicitations."  The statute, however, carves out from the definition of "telephone solicitation" calls to a person made "with that person's prior express invitation or permission" or "[t]o any person with whom the caller has an established business relationship."  47 C.F.R. § 64.1200(f)(15)(i)–(ii).  Newsmax had an

established business relationship ("EBR") with Plaintiff by virtue of his initial purchase of a Newsmax subscription, allegedly on May 23, 2019. Plaintiff made numerous additional purchases thereafter, each time creating a new EBR with Newsmax. Further, during some calls, such as on March 3, 2020, Plaintiff specifically asked Newsmax to "call me back again, I'd appreciate it," thereby providing his express invitation or permission to receive the complained-of calls.

Third, there is no private right of action to enforce the internal do not call list regulations contained within Section 64.1200(d). Rather, a violation of Section 64.1200(d) is a technical and procedural violation, which may be enforced only by the FCC pursuant to 47 U.S.C. § 227(d). Courts regularly reach this conclusion. Finally, Plaintiff's internal do not call claim fails because he never requested that Newsmax stop calling him; Ms. Casper, a third-party non-subscriber and non-user of Plaintiff's cell phone allegedly did. However, both the FCC and courts have made clear that only the individual who provides his permission to call or with whom the caller has an EBR may revoke his consent.

For any of these independent reasons, the Court should dismiss Plaintiff's TCPA claims with prejudice.

## II.    **PROCEDURAL BACKGROUND AND RELEVANT ALLEGATIONS**

Plaintiff filed his Complaint (ECF No. 1) on May 18, 2021, asserting a single TCPA cause of action, namely, a violation of the statute's general prohibition on placing telemarketing calls to telephone numbers registered on the NDNC. After the Complaint was filed, counsel for the parties met-and-conferred telephonically and over email about the facts underlying Plaintiff's claim. Ex. A, Oct. 4, 2021 Decl. of Daniel S. Blynn ("Blynn Decl.") ¶¶ 2-3. Newsmax produced to Plaintiff as part of informal early discovery aimed at resolving this suit, among other things, a call log identifying the calls that its vendor placed to Plaintiff, the recordings for each of those calls, and a

chronology and Newsmax's records of Plaintiff's purchases of Newsmax periodical subscriptions. *Id*. ¶ 3.

On July 29, 2021, Plaintiff filed his FAC. *See* ECF No. 6. Plaintiff claims that, on twenty-eight specific dates over a two-year period between May 23, 2019 and March 25, 2021, Newsmax or someone acting on its behalf called Plaintiff's cellular telephone for the purpose of selling magazine subscriptions and, on each day, he purchased the subscriptions and Newsmax accordingly charged his credit card for those purchases. The dates of each alleged call and associated purchase are set forth below at Table One.

**TABLE ONE**

|   | **FAC Paragraph No(s).** | **Call and Subscription Purchase Date Alleged** |
|---|---|---|
| 1 | 129, 148, 161, 185 | May 23, 2019 |
| 2 | 99, 114, 195 | Aug. 19, 2019 |
| 3 | 20, 83, 132, 174 | Nov. 6, 2019 |
| 4 | 22 | Nov. 12, 2019 |
| 5 | 23, 102, 117, 134 | Nov. 20, 2019 |
| 6 | 198, 220 | Nov. 26, 2019 |
| 7 | 24, 119, 136, 177, 200 | Nov. 27, 2019 |
| 8 | 26, 85, 104 | Dec. 2, 2019 |
| 9 | 28, 106, 121 | Jan. 4, 2020 |
| 10 | 29, 108, 151, 164, 187 | Jan. 16, 2020 |
| 11 | 30, 87, 123, 138, 179, 202 | Jan. 30, 2020 |
| 12 | 32, 153, 166, 189 | Feb. 1, 2020 |
| 13 | 34, 206 | Mar. 3, 2020 |
| 14 | 214 | Mar. 4, 2020 |
| 15 | 168 | June 23, 2020 |
| 16 | 35, 110, 125 | July 2, 2020 |
| 17 | 37, 208, 216 | July 8, 2020 |
| 18 | 39, 89, 155, 191 | July 17, 2020 |
| 19 | 41, 140 | July 22, 2020 |
| 20 | 42, 181 | Aug. 3, 2020 |
| 21 | 222, 228 | Sept. 18, 2020 |
| 22 | 91 | Dec. 9, 2020 |
| 23 | 224 | Feb. 15, 2021 |
| 24 | 93, 142, 244, 210 | Feb. 16, 2021 |
| 25 | 230 | Feb. 20, 2021 |
| 26 | 47 | Feb. 24, 2021 |

| | FAC Paragraph No(s). | Call and Subscription Purchase Date Alleged |
|---|---|---|
| 27 | 95, 157, 232 | Mar. 24, 2021 |
| 28 | 144, 170 | Mar. 25, 2021 |

Plaintiff characterizes these calls as "unsolicited," claiming that he never provided his phone number to Newsmax, and "never signed-up for, and has never used, [Newsmax's] services, and has never had any form of business relationship with [Newsmax]." FAC ¶¶ 56–57. However, these allegations are belied and contradicted by the recordings of the telephone conversations that Plaintiff had with Newsmax's calling vendor. For example, during the first call alleged in the FAC (May 23, 2019), Plaintiff (1) acknowledged that he had read the Newsmax periodical that he purchased previously, (2) provided his updated home address for shipping purposes, (3) agreed to purchase subscriptions to additional publications using the credit card Newsmax had on file, and (4) explicitly agreed to the terms and conditions of the sale. *See* Ex. A, Blynn Decl. at Ex. "1," at 2:11-21, 4:1-5:18, 8:2-9:5.[1]  Plaintiff further alleges that one of his "care managers," Ms. Casper, called Newsmax on March 4, 2021 and requested that Newsmax "remove [Plaintiff's] phone number." FAC ¶¶ 50, 52. Yet, the transcript of that March 4, 2021 call reflects no such do not call request. *See* Ex. A, Blynn Decl. at Ex. "2." Nonetheless, Plaintiff claims to have received additional telemarketing calls on March 24 and 25, 2021. FAC ¶¶ 95, 144, 170.

In the FAC, Plaintiff asserts the same NDNC claim arising under 47 U.S.C. § 227(c)(5) (Count I), FAC ¶¶ 260–67, as he did in his initial pleading. He also now alleges that Newsmax violated the TCPA's internal do not call list technical and procedural regulations contained within 47 C.F.R. § 64.1200(d) (Count II), *see* FAC ¶¶ 268–72, and the FDUTPA. *See id*. ¶¶ 273–86.

---

[1]     True and correct copies of the May 23, 2019 and March 4, 2021 call recordings are conventionally filed as Exhibits "1" and "2," respectively, to the October 4, 2021 Declaration of Daniel Haim, attached hereto as Exhibit "B." The other sales calls alleged by Plaintiff are similar to the May 23, 2019 call. Newsmax would be happy to provide the Court with copies of those call recordings and/or transcripts should the Court request.

## III.    <u>LEGAL STANDARD</u>

### A.    **Dismissal for Failure to State a Claim Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Mack v. Miles*, 795 F. App'x 682, 683 (11th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To that end, a plaintiff must allege facts sufficient "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1370 (S.D. Fla. 2011) (Dimitrouleas, J.) (quoting *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts in this district use a "two-pronged approach" when considering a motion under Rule 12(b)(6). *Lugassy v. Bank or Am., N.A.*, 2020 WL 9460216, at *2 (S.D. Fla. Mar. 6, 2020). "'A court should first ask whether the pleading properly asserts "well-pleaded factual allegations," or instead merely asserts legal conclusions that are not entitled to the assumption of truth.' If the complaint contains factual allegations that are well-pled, the Court should assume their veracity, and then move to the next step and ask whether the factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (citation omitted). For example, in the do not call context, courts have held that an allegation that the plaintiffs' cell phones "are residential phone numbers which Plaintiffs use in their home-based-business" was an "unsupported and conclusory allegation" insufficient to support their contention that their cell phones were residential under the TCPA. *Chenette v. Porch.com, Inc.*, 2020 WL 9078129, at *2 (D. Idaho Nov. 2, 2020); *see also*

*Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("Plaintiff's characterization of the cell phone as a 'residential, cellular telephone line' is not determinative . . . . These are not factual allegations, but legal terms drawn from the operative statute").

### B.   Courts May Consider Call Recordings and Transcripts of Those Recordings That Are Referenced In a Complaint or That Are Central to the Claims

While courts generally are limited to the four corners of the complaint when ruling on a Rule 12(b)(6) motion, they may consider extrinsic evidence, such as documents and other evidence not attached but incorporated by reference into the complaint, such as, relevant here, call recordings and transcripts of those recordings, without converting the motion into one for summary judgment.  *Caron Found. of Fla., Inc. v. City of Delray Beach*, 2012 WL 12855473, at *1 (S.D. Fla. June 6, 2012) (Dimitrouleas) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine extends to documents "even though the plaintiff does not explicitly allege the contents of th[ose] document[s] in the complaint"); *see also In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp.2d 860, 882 (S.D. Tex. 2001) ("Courts may routinely consider not just documents named in Plaintiffs' complaint, but even documents that, if not named, are 'pertinent,' 'central' or 'integral to [Plaintiffs'] claim.'") (citation omitted).  The purpose of this rule is to prevent plaintiffs from surviving dismissal by deliberately omitting references to the documents or other materials upon which their claims are based.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To that end, courts in TCPA and other types of actions have considered call recordings and transcripts at the pleadings stage.  *See, e.g., Horsey v. Feldt*, 304 F.3d 1125, 1133–35 (11th Cir.

2002) (explaining that the transcript of an allegedly defamatory CNN broadcast was central to the plaintiff's defamation claim); *Reinert v. Power Home Remodeling Grp., LLC*, 2020 WL 6743094, at *2–3 (E.D. Mich. Nov. 17, 2020) (in TCPA action, considering call transcripts between the parties "because '[the calls] are referred to in the complaint and are central to the claims contained therein'"); *Hoffman v. Cenlar Agency, Inc*., 2013 WL 1285126, at *2 (S.D. Cal. Mar. 27, 2013) (considering call recording and transcript of same in action alleging violation of California wiretapping statute because "[t]he gravamen of the FAC is that defendant wrongfully recorded its telephone conversation with plaintiff"); *Hubbard v. BankAtlantic Bancorp, Inc*., 625 F. Supp. 2d 1267, 1279 (S.D. Fla. 2008) (considering, among other things, conference call transcripts where complaint referenced those calls); *In re Theragenics Corp. Sec. Litig*., 105 F. Supp. 2d 1342, 1348 (N.D. Ga. 2000) (same).  Further, if this evidence contradicts the complaint's allegations, then the evidence controls.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see also Fabre v. Bank of Am*., 2011 WL 13234703, at *6–7 (N.D. Ga. Nov. 29, 2011) (considering loan documents not attached to complaint where complaint referred to the transaction memorialized by the loan documents, and dismissing complaint because loan documents contradicted allegations), *R. & R. adopted*, Order (ECF No. 12) (N.D. Ga. Dec. 19, 2011).

## IV.    **ARGUMENT**

### A.    **The TCPA's Do Not Call Provisions Apply Only to Communications to Residential Landlines, Not to Cellular Phones**

Both of Plaintiff's TCPA claims fail because, by its express terms, Section 227(c)(5), the NDNC provision, governs only violations of the FCC's regulations promulgated to "protect *residential* telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1) (emphasis added).  To ensure that consumers do not receive telemarketing calls to which they object, the FCC adopted the NDNC on which consumers

could place their residential telephone numbers. *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 68 Fed. Reg. 44144-01, at ¶ 3 (July 25, 2003). Similarly, 47 C.F.R. § 64.1200(d)'s internal do not call list regulations prohibit "call[s] for telemarketing purposes to a *residential* telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d) (emphasis added). In other words, in order to state a do not call claim, the calls at issue must have been placed to a residential telephone number.

Here, the calls to Plaintiff were undisputedly placed to a cell phone, not a residential telephone. "'Practical realities' as well as the plain language of the TCPA 'support a distinction between residential and cellular lines.'" *Cabrera v. Gov't Emps. Ins. Co*., 452 F. Supp. 3d 1305, 1314 (S.D. Fla. 2014) (citation omitted) (rejecting as "without merit" plaintiff's argument that the TCPA's differentiation between cellular and residential telephone "is a distinction without a difference"); *Bates v. I.C. Sys., Inc*., 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines.").[2] Indeed, in *Cunningham v. Caribbean Cruise Lines, Inc*., Judge Moreno dismissed TCPA claims, explaining that, "[w]hile Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone

---

[2]     *Compare* 47 U.S.C. § 427(b)(1)(B) (setting conditions for use of artificial and prerecorded voice calls to residential phones), *with* 47 U.S.C. § 427(b)(1)(A) (setting conditions for use of autodialed and/or artificial and prerecorded voice calls and text messages to cellular and other enumerated phones, not including residential lines). *See also Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242, 1250 (11th Cir. 2014) ("To start with, the case concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any [prohibited] telephone call to any residential telephone line . . . .' [T]he telephone number in question here . . . is a cell-phone number."). "[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).

numbers . . . . [T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."  2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016).

For that reason, courts routinely dismiss Section 227(c)(5) and 64.1200(d) claims on grounds that the TCPA's do not call rules apply only to calls to residential telephone numbers, not communications to cell phone numbers.  *See*, *e.g.*, *Cunningham v. Creative Edge Mktg. LLC*, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) (denying plaintiff's motion for default judgment and explaining, "Plaintiff alleges, and indeed confirmed at the evidentiary hearing, that the calls were made to one of his cell phones—not a residential telephone . . . . As such, Plaintiff has not provided a sufficient basis to proceed on his claim under § 227(c)(5) of the TCPA and 47 C.F.R. § 64.1200(d)."); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *4 (M.D. Tenn. May 14, 2021) ("The private right of action created by 47 U.S.C. § 227(c)(5) provides for redress of violations of the regulations that concern residential telephone subscribers. By [plaintiff']s own account, his allegations only involve calls to his cellular phone.  Accordingly, he fails to state a claim for relief under 47 U.S.C. § 227(c)(5) . . . .") (internal citation omitted); *Wass v. Amerigroup Texas, Inc*., 2020 WL 4464361, at *5 (N.D. Tex. Aug. 3, 2020) (dismissing do not call claim and noting that, where the complaint alleged calls and text messages to plaintiff's cellular telephone, plaintiff "has not stated a claim under 47 U.S.C. § 227(c) because he has not pleaded that he received the calls on his residential telephone"); *Strange v. Doe #1*, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020); *Abante Rooter and Plumbing, Inc. v. Pivotal Payments, Inc*., 2017 WL 733123, at *9 (N.D. Cal. Feb. 24, 2017) ("47 U.S.C. § 227(c)(5) . . . applies to TCPA violations based on calls made to residential telephone subscribers, not cellular telephones," but noting that plaintiff did not assert a Section 227(c)(5) claim); *see also McCurley v. Royal Seas Cruises, Inc*., 331 F.R.D. 142, 152 n.4 (S.D. Cal. 2019) ("the Court notes that [plaintiff] has not

10

alleged a violation of [the do not call rules] because he alleges calls were placed to his cell phone, not to a 'residential telephone subscriber'"), *class partially decertified*, 2020 WL 4582686 (S.D. Cal. Aug. 10, 2020).[3]

Those courts have held that "the language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) [and Section 64.1200(d)] concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Spectrum Tax Relief*, 2017 WL 3222559, at *3; *Rapid Cap. Funding*, 2017 WL 3574451, at *3; *Enagic USA*, 2017 WL 2719992, at *5–6 ("the language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.' . . . Plaintiff alleges only calls to his cellular phone.  Accordingly, he fails to state a claim for relief under 47 U.S.C. § 227(c)(5), and Count II should be dismissed."); *Rapid Response*, 251 F. Supp. 3d at 1200–01 ("The R & R, however, identifies another fault in Count II: Cunningham alleges only calls to his cellular phone. The TCPA generally distinguishes between "residential" lines and other protected lines . . . By Cunningham's own account, his

---

[3]    *See also Cunningham v. Matrix Fin. Servs., LLC*, 2021 WL 1233466, at *16 (E.D. Tex. Feb. 12, 2021), *R. & R. rejected on other grounds*, -- F. Supp. 3d --, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021); *Cunningham v. Britereal Mgmt., Inc.*, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *R. &. R. adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020); *Cunningham v. Arco Media, Inc*., 2020 WL 2310021, at *4 (E.D. Tex. Apr. 3, 2020), *R. & R. adopted*, 2020 WL 2306589 (E.D. Tex. May 8, 2020); *Cunningham v. Air Voice, Inc*., 2020 WL 9936139, at *5 (E.D. Tex. Feb. 14, 2020), *R. & R. adopted*, 2020 WL 1433948 (E.D. Tex. Mar. 24, 2020); *Cunningham v. Politi*, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019); *Cunningham v. McDonald*, 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018); *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Polselli*, 2017 WL 10666120, at *1 (M.D. Tenn. Aug. 16, 2017); *Cunningham v. Rapid Cap. Funding, LLC/RCF*, 2017 WL 3574451, at *2–3 (M.D. Tenn. July 27, 2017); *Cunningham v. Spectrum Tax Relief, LLC*, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc*., 2017 WL 2719992, at *5–6 (M.D. Tenn. June 23, 2017), *R. & R. adopted*, 2017 WL 2935784 (M.D. Tenn. July 10, 2017); *Cunningham v. Rapid Response Monitoring Servs., Inc., LLC/RCF*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017); *Cunningham v. Trilegiant Corp*., 2016 WL 10650606, at *1, *4–5 (M.D. Tenn. Aug. 26, 2016).

allegations involve a cellular phone number . . . . Count II [alleging violations of 47 U.S.C. § 227(c)(5)], then, will be dismissed.") (internal citations omitted).  Because the plaintiffs in the aforementioned cases alleged only communications to their cell phones, the courts held that they failed to state claims for relief under 47 U.S.C. § 227(c)(5).

Plaintiff here, likewise, pleads that the alleged calls at issue were placed solely to his cell phone—not a residential landline.  FAC. ¶ 18 ("Plaintiff only has a cellular telephone line . . . he cancelled his landline telephone prior to 2018.").[4]   Thus, based on his own allegation, Sections 227(c)(5) and 64.1200(d) are inapplicable and Plaintiff's TCPA claims fail.

**B.     Newsmax's Calls to Plaintiff Were Made In Response to His Express Invitation or Permission and/or Pursuant to an Established Business Relationship, Which Permits Such Calls; Count I Fails**

Plaintiff's NDNC claim also fails because the complained-of calls were placed pursuant to the Established Business Relationships ("EBRs") between Plaintiff and Newsmax and, in some cases, also pursuant to his express invitation or permission.  The TCPA generally allows an individual whose residential telephone number is registered on the NDNC and has received two or more "telephone solicitations" within a twelve-month period to bring an action against the telemarketer.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).  However, the statute removes from the definition of "telephone solicitation" calls placed pursuant to the recipient's "express invitation or permission"[5] or "[t]o any person with whom the caller has an established business

---

[4]     Even if a cell phone could be a residential line, Plaintiff does not explain how or why his cell phone is residential.  Instead, he merely asserts that he "only has a cellular telephone line which he uses for residential purposes."  FAC ¶ 18.  The Court should not accept such a conclusory allegation.  *Chenette*, 2020 WL 9078129, at *2–3; *Morgan*, 2018 WL 3580775, at *2.

[5]     Unlike the concept of "prior express written consent," which applies to autodialed and prerecorded message calls under the TCPA, "prior express invitation or permission" need not be in writing.  *See, e.g.*, 47 C.F.R. § 64.1200(f)(15)(i); *Johansen v. National Gas & Electric, LLC*, 2018 WL 3933472, at *5 (S.D. Ohio Aug. 16, 2018) (finding that plaintiff provided his prior express invitation or permission when he responded verbally, "Okay, great. Sounds good" to

relationship."  47 U.S.C. § 227(a)(4); 47 C.F.R. §§ 64.1200(f)(15)(i)–(ii).  Relevant here, an EBR includes "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date" of the call, "which relationship has not been previously terminated by either party" (often referred to as a "transactional EBR").  47 C.F.R. § 64.1200(f)(5). The EBR exemption is to be construed "broadly," *CE Design, Ltd. v. Prism Bus. Media, Inc*., 606 F.3d 443, 451 (7th Cir. 2010); *In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8771 (Oct. 16, 1992), and runs from the date of the consumer's last purchase.  *See United States v. Dish Network LLC*, 954 F.3d 970, 979 (7th Cir. 2020) ("We agree with the district court: . . . that DISH needed to use the last date of payment . . . . This makes 18 months from the last payment the terminal date.").[6]  Thus, a telemarketer may place calls to individuals with whom the telemarketer has a transactional EBR regardless of whether their telephone numbers are listed on the NDNC for up to eighteen months from the date of last purchase.  *Morris v. Copart*, 2016 WL 6608877, at *9 (E.D. Tex. Nov. 9, 2016)  ("To reiterate, the term 'telephone solicitation' does not include a call 'to any person with whom the caller has

---

defendant's proposal during one call that an enrollment specialist would call him again).

[6]      *See also* Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4593 (Jan. 29, 2003) ("The 18-month time limit for an 'established business relationship' based on a purchase, lease, rental, or financial transaction runs from the date of the last payment or transaction, not from the first payment.  In instances where consumers pay in advance for future services (*e.g.*, purchase a two-year ***magazine subscription*** or health club membership), the seller may claim the exemption for 18 months from the last payment or shipment of the product.") (emphasis added).  The analogous Telemarketing Sales Rule employs a substantively identical EBR definition as the TCPA. *Compare* 47 C.F.R. § 64.1200(f)(5), *with* 16 C.F.R. § 310.2(q) ("[A] relationship between a seller and a consumer based on: (1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call . . .").

an [EBR].'") (citations omitted).

In this case, Plaintiff claims that, on May 23, 2019, he first purchased from Newsmax subscriptions to *Blaylock Wellness Report*, FAC ¶ 129 ("On May 23, 2019, Newsmax called Plaintiff and sold him a" subscription to *Blaylock Wellness Report*); *Dr. Crandall's Heart Health Report*, *id.* ¶ 148; *Brownstein's Natural Way to Health*, *id.* ¶ 161; and *Franklin Prosperity Report*, *id.* ¶ 185. He repeats in rote fashion a number of times throughout the FAC that, on specific dates thereafter over a twenty-two month period until March 2021, Newsmax or someone acting on its behalf called Plaintiff for the purpose of selling other subscriptions, on each of those days, he purchased the subscriptions that were offered, and, accordingly, Newsmax charged his credit card for such purchases. *See supra* Section II, at Table One.[7] Notably, in all but three instances did Newsmax place any calls beyond the eighteen-month period permitted by the TCPA's transactional EBR exemption from the date of first purchase. *See* FAC ¶ 97 (alleging six calls selling *Newsmax Magazine* subscriptions over seventeen months); *id.* ¶ 112 (alleging five calls "[i]n less than one year" selling *Health Radar* subscriptions); *id.* ¶ 127 (alleging five calls "[i]n less than one year" selling *Mind Health Report* subscriptions); *id.* ¶ 183 (alleging several calls "[i]n less than one year" selling *Financial Intelligence Report* subscriptions); *id.* ¶ 204 (alleging several calls "[i]n less than six months" selling *Dividend Machine* subscriptions); *id.* ¶ 212 (alleging several calls "[i]n less than one year" selling *High Income Factor* subscriptions); *id.* ¶ 218 (alleging two calls between March and July 2020 selling *Ultimate Wealth Report*

---

[7]     Specifically, Plaintiff claims that he first purchased *Franklin Prosperity Report* on May 23, 2019 (FAC ¶ 185); *Health Radar* (*id.* ¶ 99), *Mind Health Report* (*id.* ¶ 114), and *Dividend Machine* (*id.* ¶ 195) on August 19, 2019; *Newsmax Magazine* (*id.* ¶ 83) and *Financial Intelligence Report* (*id.* ¶ 174) on November 6, 2019; *Spetrino Inner Circle* on November 26, 2019 (*id.* ¶ 220); *High Income Factor* on March 3, 2020 (*id.* ¶ 206); *Ultimate Wealth Report* on March 4, 2020 (*id.* ¶ 214); and *Invest With The Insiders* on September 18, 2020 (*id.* ¶ 228).

subscriptions); *id*. ¶ 226 (alleging three calls over about fifteen months selling *Spetrino Inner Circle* subscriptions); *id*. ¶ 234 (alleging three calls between September 2020 and March 2021 selling *Invest With The Insiders* subscriptions).

And, in those three instances where the periods between the initial purchase by Plaintiff and the final Newsmax sales call exceeded eighteen months, there were numerous interim subscription renewal purchases by Plaintiff, which created new transactional EBRs and reset the eighteen-month clock each time. *See id*. ¶¶ 129–46 (alleging seven calls over twenty-two months selling *Blaylock Wellness Report*, with sales occurring during calls dated May 23 and November 6, 20, and 27, 2019; January 30 and July 22, 2020; and February 16 and 25, 2021); *id*. ¶¶ 148–59 (alleging five calls over about two years selling *Dr. Crandall's Heart Health Report*, with sales occurring on May 23, 2019; January 16, February 1, and July 17, 2020; and March 24, 2021); *id*. ¶¶ 161–72 (alleging five calls over about two years selling *Brownstein's Natural Way to Health*, with sales occurring on May 23, 2019; January 16, February 1, and June 23, 2020; and March 25, 2021). In none of these cases were any of Newsmax's calls placed more than eighteen months after the date of Plaintiff's last subscription purchase.

While Plaintiff may now have some level of buyer's remorse with respect to purchasing allegedly "unwanted" "or duplicated magazine subscriptions" from Newsmax, FAC ¶ 69, that is irrelevant for purposes of whether an EBR existed between the parties. *See, e.g.*, *Johansen*, 2018 WL 3933472, at *1; *Copart*, 2016 WL 6608874, at *9 (calls after plaintiff initially set up appointment to donate non-existent vehicle in order to identify caller were not "telephone solicitations" because defendant had an EBR with plaintiff based on plaintiff's "acquiesce[ence] to the caller's request in the initial telephone solicitation and setting up an appointment"); *Hamilton v. Spurling*, 2013 WL 1164336, at *10–11 (S.D. Ohio Mar. 20, 2013) (EBR existed by

virtue of plaintiff setting up an unwanted appointment for chiropractic services during first call in effort to identify defendant that placed unsolicited marketing call); *see also Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 130 (N.D. Tex. 2020) (denying class certification in do not call case and noting that plaintiff had an EBR with defendant each time he set up a fake appointment to talk with one of defendant's insurance agents in order to identify the telemarketer). Rather, whether an EBR exists between two parties is evaluated under an objective standard, *i.e.*, whether it is reasonable for the telemarketer to believe that it has a business relationship with the consumer based on that consumer's purchase of the products being marketed. *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 643, 648 (W.D. Wash. 2007) ("Determining which recipients had [an EBR] with defendant should be a relatively straightforward matter using objective evidence.").

*Johansen* is instructive. There, after the plaintiff received an initial allegedly unsolicited call from the defendant-energy company, he feigned interest in the defendant's services and completed the enrollment process to seemingly become one of its electric customers. 2018 WL 3933472, at *1. The plaintiff knowingly supplied a fake address and false utility account number during enrollment so that "no matter what happened, he would not receive [the defendant's] services," which he did not want. *Id.* (citation omitted). For that reason, the plaintiff argued that no EBR existed. *Id.* The court, however, rejected that argument: "[the plaintiff] may have privately understood that his purchase and inquiry were not in earnest and that he would not receive [the defendant's] services. But his deceptive conduct gave [the defendant] an objectively reasonable basis for believing he had [an EBR] with [the defendant]" as of the date of the first call. *Id.*

Here, there can be no serious dispute that Plaintiff agreed to purchase various Newsmax subscriptions during the calls alleged in the FAC. Thus, a transactional EBR existed as of, at least,

those purchase dates justifying subsequent telemarketing calls to him for a period eighteen months each time despite his number being listed on the NDNC.  Further, as of at least March 3, 2020, Newsmax had Plaintiff's prior express invitation or permission to place further telemarketing calls to him.  Specifically, on that date, Plaintiff advised Newsmax, "if you call me back again, I'd appreciate it."  Ex. A, Blynn Decl. at Ex. "3," at 2:2:11-12.  Thus, Newsmax was permitted to place calls to Plaintiff based on that invitation or permission, in addition to the transactional EBRs it had with him.  Accordingly, Plaintiff's NDNC claim should be dismissed.

### C.    There is No Private Right of Action to Enforce Alleged Violations of the Internal Do Not Call Regulations; Count II Should be Dismissed

Even if Plaintiff could allege that Newsmax made calls to a residential telephone as opposed to a cell phone to sustain his do not call claims, his claim under Section 64.1200(d) would still fail for the simple reason that this provision provides no private cause of action.  Regulatory section 47 C.F.R. § 64.1200(d) was enacted pursuant to 47 U.S.C. § 227(*d*), which provides the technical and procedural standards for TCPA compliance.  *Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021); *Worsham v. Discount Power, Inc.*, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021); *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 981 (D. Md. 2019); *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *15 (W.D. Okla. July 19, 2019); *Worsham v. Travel Options, Inc*., 2016 WL 4592373, at *4 (D. Md. Sept. 1, 2016) ("the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA") (emphasis in original), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012); ("Defendant also argued [in support of dismissal] that none of the available TCPA private rights of action permit a recovery for violating those regulations [contained in 47 C.F.R. § 64.1200(d)] . . . . The Court

agrees with Defendant . . . ."); *Burdge v. Ass'n Health Care Mgmt., Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (holding that the regulations set forth in 47 C.F.R. § 64.1200(d) "are technical and procedural in nature and were promulgated pursuant to [S]ection 227(d) of the TCPA.").[8]

Section 227(d), however, "does not contain a similar private right of action, unlike other subsections" of the TCPA. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013); *Hurley v. Wayne Cty. Bd. of Educ.*, 2017 WL 2454325, at *4 (S.D. W. Va. June 6, 2017) ("Congress did not intend private parties to enforce either Section 227(d) or the regulations prescribed pursuant to that section."). As the *Direct Energy* court noted in dismissing that complaint on grounds that no private right of action exists to enforce the regulations contained in Section 64.1200(d), "[w]hile the TCPA is a remedial statute, its remedial purpose does not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" 2021 WL 948819, at *3 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). And, because "[47 C.F.R.] § 64.1200(d) was promulgated under [47 U.S.C.] § 227(d)," rather than subsection 227(c), "[t]here is no private right of action

---

[8] Plaintiff likely will point to the "handful of decisions," *Nece v. Quicken Loans, Inc.*, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018), such as *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) and *Drew v. Lexington Consumer Advocacy, LLC*, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016), that have found that 47 C.F.R. § 64.1200(d) was promulgated under 47 U.S.C. § 227(c). Those courts, however, did not analyze the regulations' limitations, which expressly identify the provisions of Section 64.1200(d) as "procedures" for do not call policies, nor the express language of the TCPA, which identifies 47 U.S.C. § 227(d) as providing the statute's "technical and procedural standards." *See Nece*, 2018 WL 1326885, at *8; *Creative Edge Mktg. LLC*, 2021 WL 3085415, at *5 ("§ 227(d) governs "technical and procedural standards"). Accordingly, courts have rejected *Charvat* and *Drew*, instead following the numerous decisions holding that Section 64.1200(d) falls within the purview of 47 U.S.C. § 227(d). *See, e.g.*, *Braver*, 2019 WL 3208651, at *15 (adopting *Travel Options* and *Burdge*, and finding that *Charvat* was decided "without analysis"); *Travel Options*, 2016 WL 4592373, at *7 (agreeing with *Burdge* as "persuasive," and rejecting *Charvat* and *Drew* as being decided "without analysis").

for alleged violations of § 64.1200(d)." *Braver*, 2019 WL 3208651, at *15. Because there is no private right of action to enforce the technical and procedural regulations contained within 47 C.F.R. § 64.1200(d), such alleged violations necessarily fail and Count II should be dismissed.

>    **D.      Plaintiff's Internal Do Not Call Claim (Count II) Also Fails Because Plaintiff Never Made a Do Not Call Request to Newsmax**

The TCPA's technical and procedural rules require that a telemarketer honor a consumer's request to no longer receive telemarketing calls from it (*e.g.*, an entity-specific internal do not call request) on his "residential landline" within a reasonable period of time not to exceed thirty days. 47 C.F.R. § 64.1200(d)(3); *Nece*, 2018 WL 1326885, at *7. While a consumer may make a do not call request to a telemarketer to no longer call him, just as with prior express consent under the TCPA, *only* that consumer may make such request; a third party may not make a do not call request on another's behalf. *Harrington v. RoundPoint Mortg. Serv'g Corp*, 2017 WL 1331072, at *7 (M.D. Fla. Apr. 11, 2017) ("A primary aspect of consent is that it is extended from one with the authority to revoke it.") (citing *Osorio*, 746 F.3d at 1255); *Cholly v. Uptain Grp., Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015) (granting motion to dismiss to the extent that plaintiff allegedly revoked consent by means of bankruptcy court's automatic stay and explaining, "[t]o begin, the FCC's order provides that the consumer, not a third party, may revoke any prior consent that was given to the caller") (citing *In re Rules and Regs. Implementing the TCPA of 1991, Declaratory Ruling and Order*, 30 FCC Rcd. 7961 (2015)); *see also In re GroupMe, Inc.*, 29 FCC Rcd. 3442, 3447 (2014) ("To the extent that the comments are intended to suggest that we should interpret the TCPA as permitting someone other than the consumer, such as someone claiming actual or apparent authority, to provide the prior express consent of the consumer, we make no such finding . . . . [T]he TCPA specifically requires the prior express consent of the consumer . . . [An] intermediary cannot provide consent on behalf of the consumer."); *Hamilton*, 2013 WL

1164336, at *10 n.12 (noting but not deciding that, even if plaintiff-husband called defendant and told it not to call plaintiff's wife again, "because it [the request] was not from Mrs. Hamilton directly, it may not have been effective to terminate *her* [EBR] with [defendant]") (emphasis in original and citations omitted).

Plaintiff alleges that he "is the subscriber and sole user of [his cell phone number] and is financially responsible for phone service to [that] [n]umber[.]" FAC ¶ 58.  As such, he is the only one who may make a do not call request to terminate the EBR he had with Newsmax, or revoke the express invitation or permission that he gave to Newsmax.  *See Harrington*, 2017 WL 1331072, at *7 (noting that plaintiff as the "owner, and thus the subscriber of the 5307 Number" could allow his wife and daughter to use his cell phone, but rejecting defendant's argument that plaintiff's family members, thus, could provide consent to defendant on plaintiff's behalf).  Fatal to his internal do not call claim, Plaintiff alleges that, on March 4, 2021, a third party, Ms. Casper—"one of [his] care managers," FAC ¶ 46—asked Newsmax "to remove [Plaintiff's] phone number." *Id.* ¶ 52.[9]  Plaintiff himself never requested that Newsmax stop calling him.  Accordingly, Plaintiff's internal do not call claim should be dismissed for this reason as well.

## V.     UNDERLINE CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's TCPA claims (Counts I and II) with prejudice.

---

[9]     The transcript of Ms. Casper's March 4, 2021 call to Newsmax, however, reflects that she did not make a do not call request, contradicting Plaintiff's allegation.  *See* Ex. A, Blynn Decl. at Ex. "2."

Dated:  October 4, 2021                          Respectfully submitted,

                                                  /s/ Aaron S. Blynn
                                                 Aaron S. Blynn
                                                 GENOVESE JOBLOVE & BATTISTA, P.A.
                                                 Florida Bar No. 0073464
                                                 100 S.E. Second Street
                                                 44th Floor
                                                 Miami, FL 33131
                                                 Telephone: (305) 349-2300
                                                 Facsimile: (305) 428-8810
                                                 ablynn@gjb-law.com

                                                 *-and-*

                                                 Daniel S. Blynn (*pro hac vice* forthcoming)
                                                 dsblynn@venable.com
                                                 William C. Lawrence (*pro hac vice* forthcoming)
                                                 wclawrence@venable.com
                                                 VENABLE LLP
                                                 600 Massachusetts Avenue, NW
                                                 Washington, DC 20001
                                                 Telephone: (202) 344-4000
                                                 Facsimile: (202) 344-8300

                                                 *Attorneys for Defendant Newsmax Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2021, I have electronically filed a copy of the foregoing Defendant's Partial Motion to Dismiss through the CM/ECF system upon all counsel duly registered to receive service of filings in this case.

                                                  /s/ Aaron S. Blynn
                                                 Aaron S. Blynn

                                                 *An Attorney for Defendant Newsmax Media, Inc.*